### IN THE

## SUPREME COURT

#### OF THE

# STATE OF ARKANSAS,

### In July Term, A. D. 1840, being the sixty-fourth year of our Independence.

---

LAWSON, SHERIFF, *against* THE COUNTY OF PULASKI.

### ON CERTIORARI *to Pulaski County Court.*

The delinquent list, returned by the collector of taxes to the County Court, according to law, is only *prima facie* evidence that he has disharged his duty, and is unable to collect the taxes mentioned in it.

The County Court is to examine, adjudicate upon, and adjust it, and allow him a credit for only so much as is properly returned delinquent. It should, therefore, if it be doubtful whether any part of it is improperly returned, hear evidence, and refuse or allow him credit, according as he has performed his duty.

The collector may also retain, and is entitled to credit for, eight per centum commission on the amount collected for county purposes, in case he settles at the time prescribed by law, and is in no way in default.

And his delinquent list, commission, and actual payments into the County Treasury, are the only credits to which he is entitled, upon his settlement for the county taxes.

In settling his accounts for blank licenses, fines, taxes on conviction, and moneys to be collected and paid him by other officers, he is entitled to be credited with blank licenses returned, and all sums which he has been unable to collect, after due diligence and all legal means used, and also moneys never received by him from officers who should have collected and paid over to him.

No other demands against the county, in favor of the Sheriff, can be legally set off against, credited upon, or discounted from his liability to the county, in the settlement of his accounts.

As to any other demands against the county, he stands on the same ground with other creditors, and must receive warrants for their amount in the same manner as warrants issue to other persons for claims against the county.

Each collector is only required to settle at each term of the County Court, for all moneys *actually* received by him, or which it appears from the certificate of some court of record, he ought to have received, and at those settlements he is entitled to no other credit than for blank licenses returned.

It is only at the November term, annually, that he is bound to make a general settle-

Lawson, Sheriff, *against* the county of Pulaski.

ment of all moneys then legally charged or chargeable against him, not before accounted for and paid over; and he has time, until that term, annually, to collect and pay over the county taxes, and other demands, the collection of which, by law, devolves upon him.

It is only at that term that he is bound to return his delinquent list of officers and others. All existing demands then chargeable against him, must then be either paid by or credited to him; and he is not, on any subsequent settlement, entitled to credit for any delinquency existing at the time of such annual settlement.

The Sheriff cannot be charged, in his settlements for any fines imposed upon him for the use of the county—such fines, if not voluntarily paid by him, must be collected by execution. His securities are not liable for them.

If no term of the County Court is held in November in any year, the Sheriff cannot return his delinquent list for that year, to the County Court, until its November term in the year succeeding, and is then entitled to be credited with it.

But he cannot be so credited, unless a copy of the delinquent list was set up as required by law.

It was error for the County Court to refuse to credit the collector with certain items in his delinquent list, on the ground, as stated in the record, that " *the court knew the persons against whom the items were charged, to be good and solvent men of the county, ready at any time to pay their taxes.*"

If these facts were known to any member of the court he should have been sworn, and have testified, subject to cross-examination.

Neither judges nor juries can consider such facts as may happen to be within their private knowledge, and base their decisions upon them.

The collector is entitled to no credit for his delinquent list, nor can the County Court consider the list, unless it is presented under oath; and if the record does not show, affirmatively, that it was verified by his affidavit, the collector cannot avail himself of any erroneous decision of the County Court in relation to it.

And if the record of the County Court states that the collector failed to perform his duty in listing, assessing, and striking off to the State certain lands, this court will presume that the facts warranted that decision, unless the contrary appears by the record.

Where the collector settles with the County Court at the proper time, and the correctness and truth of his account is not questioned, if he afterwards withholds and fails to pay over the amount then found due by him, he is liable only to a penalty of five per centum per month on the amount; and not to the penalty of twenty-five per centum, or interest at fifty per centum per annum; to which he becomes liable only when he fails to render true accounts at the proper time.

If there is no regular term of the County Court in November, a special term must be held on the second Monday of November in each year, for the purpose of the collector's making his annual settlement.

And a previous term of the court cannot be legally kept open, continued or held after the second Monday of November.

Where, therefore, the regular term of the County Court was held in October, and continued from day to day until after the second Monday of November; it was ended by operation of law on the Saturday preceding that day.

Therefore, a settlement made with the collector as at October term, but on the 19th day of November, as well as a subsequent judgment at January term, based on that settlement, was extra-judicial and unauthorized by law.

Absent, DICKINSON, *Judge.*

This case came up on a certiorari to the County Court of Pulaski County, issued on the petition of *James Lawson, Jr.*, Sheriff of that county; the allegations in which petition are fully stated in the opinion. It was argued here by

PIKE, for the petitioner; and by

Lawson, Sheriff, *against* the County of Pulaski.

TRAPNALL & COCKE, *Contra.*

RINGO, *Chief Justice*, delivered the opinion of the Court:

This case comes before this court upon a writ of certiorari to the County Court of Pulaski county, granted on the petition of the plaintiff commanding that court to certify and send to this, a true and complete transcript of all such records, papers, vouchers and exhibits, in said County Court existing, as appertain to the settlement of his accounts, as Sheriff of Pulaski county, with said county, made by him, with the County Court thereof, at the October term, 1839, and January term, 1840, of said court, as well as the judgment of said court against him, founded thereon.

In obedience to the mandate of said writ, a certified transcript of the settlement and judgment aforesaid, has been returned to, and filed in this court.

From this transcript, it appears that the plaintiff, on the 18th day of November, 1839, voluntarily entered into a settlement, with the County Court, of his accounts with the county. That he was then charged on account of monies due to the county, which he either had, or ought to have collected, with the aggregate sum of $5259 16, without any objection thereto appearing, by the record, to have been made by him.

The plaintiff, being thus charged with the sum above stated, exhibited a list of delinquents for the years 1838 and 1839, of whom he alleged he was unable to collect the amount of poll tax charged to them in the tax books for said years, and for the amount of which he claimed a credit on the above charge, but the court refused to credit any thing on account of the former, and deducted one dollar from the amount of the latter, and then placed the residue thereof to his credit.

He also exhibited a list of lands which, as he alleged, had been twice listed and taxed for the same year, either in the name of the same, or of different persons. Also, another list of lands, which, as he alleged, belonged to non-residents of his county, and as such, had been assessed, taxed, advertised, sold and struck off to the State, according to law. And, also, a third list of lands, which he alleged belonged

to residents, of whom he had been unable to collect the tax charged thereon in the tax book, which had also been advertised, sold, and struck off to the State according to law, and thereupon he claimed a credit on the above charge for the amount of county taxes charged on the lands mentioned in said lists, only a part of which was passed to his credit by the County Court, and the residue rejected, for the reasons set forth in the record.

He also claimed credit for the amount of four per centum on the aggregate amount of the assessed value of property assessed for taxation, as his compensation for making the assessment; but the court refused to allow this claim, or credit him with the amount thereof, and only allowed, and placed to his credit therefor, the amount of five per centum on the aggregate amount of county taxes charged on the tax book. He also claimed, and the court placed to his credit, the amount of 8 per cent. on the sum collected, or which ought to have been collected by him on the tax book, as his compensation, allowed by law, for collecting the same.

The plaintiff also exhibited sundry claims against the county on account of services alleged to have been rendered by him, in his official character, as Sheriff of said county, for which the county is, as he insists, responsible to him, and for the amount of which he claims a credit, or set off against so much of his liabilities to the county charged against him, as above stated, a small portion of which the court allowed and credited thereon, and rejected the residue.

The plaintiff also returned blank licenses, with the amount of which he stood charged as a part of the above mentioned aggregate, and obtained a credit therefor, making, in the aggregate, the sum of $1130 81, with which he is credited on said settlement; leaving him still charged with the sum of $4128 35, which the court ordered him to pay over to the County Treasurer forthwith.

At the January term, 1840, of the county court, that being the next succeeding term after the settlement aforesaid, the plaintiff again produced and exhibited for allowance a portion of the claims which had been presented by him and rejected by the court at the previous term, and also moved the court for an order to sell the lands of certain non

Lawson, Sheriff, *against* the County of Pulaski.

residents; but the court refused to order the sale of said lands, and subsequently, on the 27th day of January, 1840, proceeded to enter up judgment against the plaintiff for $4,128 35, the amount of the balance against him, on his settlement with the County Court at the previous term, which he was then ordered to pay over forthwith to the county treasurer, but had not paid within ten days thereafter, and also for the further sum of $1,032 08 3-8, the penalty of twenty-five per centum thereon, imposed upon him by law, for his failure to pay the balance found against him on the previous settlement, within ten days after the order to pay the same as aforesaid was made, " and interest thereon at the rate of fifty per centum per annum until paid," together with costs, and awarded execution therefor to the coroner, and at the same time entered on record an order directing said execution to be credited by the sum of $2,000, paid on the 13th, and the further sum of $850 paid on the 18th day of January, 1840.

On the 29th day of January, 1840, the plaintiff made another settlement with the County Court of his accounts with the county as Sheriff, upon which he was charged with the sum of $36 50. Whereupon he produced sundry accounts and claims against the county, a part of which the court rejected, and allowed the residue, and at the same time credited the amount last stated, in full, by part of the sum so allowed, and ordered the clerk to issue a warrant in favor of the plaintiff on the county treasurer for the residue thereof.

Upon the matters thus appearing from the record, certified to this court, by virtue of the authority of the writ of *certiorari* aforesaid, the case was argued and submitted to the court. Before we consider the exceptions to the proceedings of the County Court, taken and relied upon by the plaintiff, in the argument of the case, it may be of service to state some of the principles which, in our opinion, apply to the case, and must in some respects control its decision.

Every collector is bound by law diligently to endeavor " and use all lawful means to collect all the taxes specified in the books of their respective counties," and when he has so endeavored and used such means without being able to collect all of the taxes specified in the tax book, it his duty to make out a list of such taxes as he has been unable to collect, stating therein the names of all persons whose taxes

cannot be collected, alphabetically arranged, with the amount due from each, a copy of which it is his duty to set up at the court-house door of his county on or before the first day of November in each year, and return the original thereof, under oath, to the County Court at the first term thereof, after the first of November, annually, the amount of which, " or so much thereof as the court shall find properly returned delinquent, shall be allowed and credited to the collector in his settlement," and it is the duty of the Clerk of the County Court " to enter on the records of such court, at full length, the delinquent list of the collector, *as adjusted by the court*," and immediately thereafter, to " transmit a copy thereof to the Auditor of Public Accounts, who shall credit the collector with the amount appearing from such list to be due to the State." See *Rev. Stat. Ark. pages* 682, 683, 5, 65, 66, 67, *and* 68.

From a careful examination of the statutory provisions above referred to, it is the opinion of this court, that the delinquent list of the collector, returned to the County Court in the manner prescribed by law, is to be received as prima facie evidence only, that the collector has discharged his duty without being able to collect the taxes therein mentioned, and he is not thereupon entitled, absolutely, to a credit for the amount thereof; and it is the duty of the County Court to examine, adjudicate, and adjust the same, and allow and credit to the collector in his settlement so much thereof as the court shall find properly returned delinquent, and it is the duty of the court to examine and ascertain what is, and what is not, so returned. It must as we conceive, be the duty of the court, if they are informed or believe the same, or any part thereof, is improperly so returned, to hear and consider any legal testimony within their knowledge, or which may be adduced by the collector, or any other person, either showing, or conducing to show, that he has discharged his duty in regard to the collection thereof, or that he has failed in the discharge of some duty required of him by law, in relation thereto, when, if it shall appear affirmatively, from such testimony that the collector has not discharged his duty in every respect, essential to the collection of any of the taxes therein specified, the court is bound by law to refuse him credit in his settlement for such part thereof, and allow and place the residue to his

Lawson, Sheriff, *against* the County of Pulaski.

credit, and no other adjustment thereof can be legally made upon the settlement of his accounts either with the county or State.

In addition to the credit on account of delinquencies, the collector, (if he settles his accounts at the time prescribed by law, and is not in any wise whatever in default himself,) on his settlement with the County Court, may legally demand a deduction of eight per cent. from the amount collected by him on the tax book, for county purposes, this being the compensation allowed him by law for collecting the same, which he has, in that event, a legal right to retain in his own hands. And these, in our opinion, constitute the only claims, exclusive of payment actually made into the county treasury, for which the collector has a legal right to demand credit on his settlement with the County Court, for the county taxes contained in the tax book. Although we doubt not that in settling his accounts for blank licenses, fines, taxes on conviction, and such other moneys as are to be collected and paid to him by other officers, with which he is chargeable, or may be charged, he is legally entitled to a credit, for the amount of blank licenses returned, and such other sums as he may satisfy the court he has been unable to collect, after having used due diligence, and all legal means, to collect them, as well as the amount charged against him on account of moneys collected, or which ought to have been collected, and paid over to him by some other person, which he has never received. But we are not aware that any other demand which he may have against the county can be legally set off against, credited upon, or discounted from, his liability to the county, on the settlement of his accounts to be made with the County Court; because the law has not so prescribed, and there is not in the nature of things any such connection between them, as to form an exception to the general rule, requiring warrants to be drawn upon the county treasury for all such sums of money as may be ascertained by the County Court to be due from the county to any person whatsoever. See *Rev. Stat. Ark. chap.* 41, *sec.* 28, *p.* 226, and *chap.* 43, *sec.* 4. *p.* 230. Besides which, the practice of introducing the various and complicated claims of the Sheriff against the county revenue, into the settlement of his accounts for moneys collected or received by him for the county, would be necessarily attended with great inconvenience, and be well

calculated to produce, in the settlement, the utmost confusion, and under certain circumstances, if they were allowed to be so credited, set off, or discounted according to the course of proceeding permitted in the case before us, other creditors of the county might be prejudiced thereby, contrary to the intention of the Legislature, which was obviously to place all creditors of the county upon an equality? and to simplify the settlement to be made with the County Court by the collector as much as possible. The Sheriff, therefore, is not, in our opinion, legally entitled, on his settlement with the County Court, for moneys collected by him for the county, to credit on account of any demand against the county not immediately or directly connected with the collection, or payment into the county treasury, of the county taxes, or other moneys which it is his duty to collect or receive for the county, and pay into the county treasury; and every other demand in his favor must be prosecuted, passed upon, and satisfied in precisely the same manner as the like claims are required by law to be prosecuted and paid in the hands of others; the law not allowing him any preference in this respect over other creditors.

The collector is also expressly required by law to settle with the County Court at each term thereof for all monies actually collected or received by him for the use of the county. See *Rev. Stat. Ark.*, *ch.* 128, *sec.* 61, 62, *p.* 682, and *ch.* 41, *sec.* 18, 21. And upon each settlement he is bound by law to return to the County Court all blank licenses remaining in his hands, for the amount of which, and which only, he is entitled to a credit upon his settlement at each term; *chap.* 128, *sec.* 61. But from a careful examination and comparison of every provision of law relating to the subject, we are satisfied that it is only at the November term annually, that he is bound by law to settle and account for all moneys then legally charged or chargeable against him, which he either has or ought to have collected or received for the use of the county, and which he has not previously accounted for and paid into the county treasury, because it is at this term, and this only, that he can, and is legally bound to, return his delinquent lists of officers and others, of which it his duty to collect or receive money for the use of the county; and, therefore, as he is only accountable, upon his other settlement, for such moneys as he has

actually collected or received, or which, according to the certificate of some other court of record, he ought to have collected, and cannot obtain any credit or allowance for delinquencies of any description whatever, he has time until his settlement at the November term, annually, to collect, receive, and pay into the county treasury the county taxes, and other demands, the collection of which is devolved upon him by law.   And he is then legally chargeable with every demand in favor of the county which he has or ought to have collected or received, and he is then bound to pay into the county treasury whatever may remain charged against him, after deducting the amount of all delinquencies, contained in his delinquent lists of moneys due the county, as finally adjusted and allowed by the County Court, and the commission legally charged for collecting and receiving the same.   See *Rev. Stat. Ark.,* chap. 61, sec. 22, p. 398.   *Ib.* chap. 128, sec. 65, et seq.   And, therefore, at that term annually, every existing demand then chargeable against him must either be paid by or credited to him as aforesaid, and he is not upon any subsequent settlement entitled to credit for any delinquency existing at the time of his settlement at the November term previous.

And if, upon any settlement of his accounts with the County Court for moneys collected or received by him for the use of the county, the collector shall render true accounts thereof, but fail to pay forthwith into the county treasury the amount found due from him to the county, he thereby forfeits, and is bound to " pay to the county the sum of five per centum per month on the amount wrongfully withheld, to be computed from the time payment ought to have been made until actual payment." See *Rev. Stat. Ark.,* chap. 39, sec. 6, 7, p. 214.   But if any collector shall neglect to render to the County Court, at every term thereof, true accounts of all moneys belonging to any county for which he is chargeable, or settle his accounts thereof with the County Court at each term thereof, it is the duty of the court to " adjust the accounts of such delinquent according to the best information that can be obtained, and ascertain the balance due the county," and in either event the court may refuse to allow any commission to such delinquent, and he is bound to pay the balance found due to the county, as aforesaid, into the county treasury without delay; and when the col-

lector fails at any term of the County Court to settle his accounts with the county, or to render a true account thereof, and fails to pay the amount ascertained to be due from him to the county as aforesaid, and produce the treasurer's receipt therefor, within ten days after such balance is ascertained, it is the duty of the Clerk to charge him, as a penalty for such failure, twenty-five per centum on the amount then due; and unless such delinquent shall appear on the first day of the next succeeding term of the County Court, and show good cause for setting aside such settlement, the court shall enter up judgment for the amount due, with the penalty added thereto, and fifty per centum per annum thereon until the same shall be paid; but if good cause be shown for setting aside such settlement, the court may re-examine, settle, and adjust the same according to law, and may remit any penalty that may have been imposed.    See *Rev. Stat. Ark.*, sec. 21, *et seq. p.* 225, 226.

Having stated these general principles, we will now proceed to examine and consider the objections to the proceedings of the County Court taken and urged by the plaintiff in this court, or so many of them as may be deemed necessary to a proper understanding and decision of the case.

The plaintiff, in his settlement with the County Court, at its November term, 1839, is charged, as appears by the record, with the amount of two fines, of $10 each, imposed upon him at the *April* term preceding, one by the County Court, and the other by the Probate Court of Pulaski county.    And he now insists that he *is* improperly charged on said settlement with this sum.    That the collector is not properly chargeable therewith, on the settlement of his accounts with the County Court, is, in our opinion, unquestionably true; because he is only accountable on such settlement for all moneys which he either has, or ought to have collected or received for the use of the county, by virtue of his office, and he cannot under any circumstances officially collect or receive the amount of any such fine, or be charged with the payment thereof in his official character. Yet he is legally bound to pay the amount of every such fine, and the county has a corresponding legal right to receive the same, but his liability therefor is individual merely; his securities are not, and can

not, by any act of his, be made responsible for the collection or payment thereof; nor is he the agent of the county legally authorized to collect or receive it, or to perform any official act respecting it, and therefore it can only be legally collected or paid as other judgments or demands for which he is individually and primarily liable to the county; that is, it may be voluntarily paid by the Sheriff into the county treasury, or collected by the Coroner on execution. The record before us does not show for what cause the fines in question were imposed, but the legal presumption is that they are founded upon a conviction for some act done or omitted, for the commission or omission of which the law subjects the guilty person to punishment by fine, and in either case the same principle applies and must govern in the decision of the present question. It is therefore fair to state a case by way of illustration, and with this view only, we will suppose the plaintiff convicted of the crime of manslaughter, and sentenced to pay a fine of $10,000, as if guilty thereof he might lawfully have been, could it be seriously urged that he could be legally charged with the amount of such fine on the settlement of his accounts with the County Court? In our opinion it could not, nor could the sureties in his official bond be made responsible for it in any court. We are therefore of the opinion that the amount of the two fines in question are improperly and illegally charged against the plaintiff on the settlement of his accounts, as collector, with the County Court.

The plaintiff also insists that he is legally entitled, on this settlement of his accounts with the County Court, to a credit of $9 92, this being, as he alleges, the amount of delinquencies on account of the poll tax in said county for the year 1838, which was refused him by the County Court. It appears affirmatively, from the record before us, that no list of these delinquencies was, or ever could have been, legally returned to the County Court by the plaintiff, or any credit claimed by him on account thereof, previous to the November term, 1839, although he had previously settled his accounts in full of all county taxes for the collection or receipt of which he was charged for that year; and, therefore, upon the principles above stated, he was, in our opinion, warranted by law, in returning his delinquent list for the year 1838 at the November term, 1839, and was then, on the set-

tlement of his accounts, entitled to credit for the amount thereof, if he had in every respect discharged his duty in relation thereto; because it appears affirmatively, by the record, that no term of the County Court was held in November, 1838, and therefore he could not legally have returned his delinquent lists for that year until the November term, 1839, nor was the court authorized by law to adjudicate upon and adjust them at any intermediate term, if they had been returned to it. But it also appears affirmatively, from the record, that no copy of this delinquent list, for the year 1838, was set up by the collector, as required by law. This duty is imperatively enjoined upon him by the statute, and its performance must be regarded as indispensable to his right to a credit on account of such delinquencies, and on this ground the credit claimed was correctly refused by the County Court.

But the court erred in refusing to credit the plaintiff by the full amount of his list of delinquencies on account of the poll taxes of said county, for the year 1839, returned by him at the November term, 1839, and rejecting $1 of the amount thereof, on the ground, as stated in the record, that the court knew the persons against whom the same is charged to be good and solvent men of the county, " ready, at any time to pay their taxes." If such was the fact, and it was known to the persons of whom the court was composed, or any of them, they should have been sworn and testified thereto, precisely as other witnesses, subject to a cross-examination by the plaintiff, who should have been allowed, in such case, to introduce any legal testimony, in his power, to rebut the testimony given, or establish the truth and justice of his return; upon the facts, thus presented, the court could have adjudicated legally. But we are not aware of any principle of law which would justify any court in considering facts, which the court is not bound to know and take notice of, judicially, until they have been openly admitted as testimony, and presented in such manner that the parties interested or concerned may hear and respond to them, except in some few instances where they transpire in the presence and view of the court, and constitute a violation of the criminal or penal laws; and, even then, the parties charged must generally have an opportunity afforded them to explain, answer and repel them, which he could seldom, if ever, have, if the principle was admitted that the

Lawson, Sheriff, *against* the County of Pulaski.

court or jury is at liberty to consider such facts as may happen to be known to the judges or jurors who have not testified thereto, and found their decision or judgment thereupon; but we confidently believe that no such principle has ever been recognized in the laws and jurisprudence of England and the United States, or of any State in this Union; and it is, in our opinion, a principle opposed to the genius of civil liberty, and the whole spirit of our institutions; and, therefore, we are of opinion that the County Court could not, on the ground set forth in the record, legally refuse to credit the plaintiff with the amount of poll tax charged against William H. Ewing and Joseph Reed, as specified in the delinquent list returned by him. However, it may be proper to remark here, that it does not in any manner appear, from the record, that either of the delinquent lists in question were returned by the collector, under oath, as required by the statute; and if they were not, in fact, so returned, he was not legally entitled to a credit on account of any delinquency therein stated; and the court ought to have refused to consider them until they were verified by oath. And, therefore, upon the principle that every party who appeals to a superior, to reverse or set aside the proceedings of an inferior court, must show, affirmatively, that the proceedings, sought to be avoided are erroneous or illegal—in some respect prejudicial to his interest—and its correlative, that every legal presumption, not contradicted by the record or pleadings in the case, must be indulged in favor of the proceedings in the inferior court, the obligation rested upon the plaintiff, in this case, if he considered the proceedings of the County Court erroneous or illegal, and intended to resort to a superior judicial tribunal to quash, reverse, or set aside, that he might be relieved therefrom, to cause the testimony, and every other fact material to shew his legal right to a decision or judgment in his favor, to appear in the record. This he failed to do, in not causing it to appear, of record, that his delinquent lists were returned " under oath," as required by law, and for this reason he cannot, in this proceeding here, avail himself of any error in the decision of the County Court in relation thereto, because the record does not show him entitled to any credit on account of the delinquencies therein set forth.

In regard to the credit claimed by the plaintiff, on account of

taxes charged upon lands, as well of non-residents as residents of the county of Pulaski, which were struck off to the State when offered for sale by him, for the non-payment of taxes due thereon for the years 1838 and 1839, it appears, from the record, that the County Court adjudicated thereupon, and credited him, on his account with the county, by the full amount of county taxes charged on such lands, in every instance where he had discharged his duty, by filing, in the office of the Clerk of the County Court, such list thereof as is prescribed by the statute, and causing a copy of the same to be set up at the court-house door of said county, and published and recorded in the manner and within the time prescribed by law. See *Rev. St. Ark. ch.* 128, *Sec.* 79, 80, 81, *p.* 684–5. And, although it is shown, by the record, that a portion of the credit claimed on these accounts was refused, the testimony before the court, upon which so much of the claim was rejected, does not appear in the record, which simply states, in substance, that the court was " not satisfied that the collector had done what the law required him to do, before he should be credited with the same," and that the court " proceeded to investigate the matter," and, thereupon, found that the plaintiff, in regard to so much of his said accounts as were subsequently rejected, had failed to file such list of said lands, as he is required, by the statute, to file with the Clerk of the County Court, and also *to cause a copy* of the same to be set up at the court-house door of said county, or to be published or recorded in the manner and within the time prescribed by law. And also, that some portion of the lands and taxes contained in said lists, so by him returned, had been interpolated in the tax book; and that the plaintiff was not, in any wise, charged with the amount of taxes so interpolated, or any part thereof, in the settlement of his accounts with the county; and, therefore, so much of said accounts was rejected; and there is nothing in the record showing, or even conducing to show, that the court erred in this decision, thus made. We are, therefore, bound to presume that the facts in testimony warranted the decision, and that so much of the credit, claimed on these accounts, as was not allowed, was rightly and legally refused.

Upon the principles above stated, it is manifest that the collector

had no legal right to demand credit, on the settlement of his accounts with the county, for any sum, whatever, which may be due him, from the county, on account of fees for services rendered in any matter not connected with the collection of the county revenue, or the receipt of moneys due the county, and the same could not, on such settlement, be legally placed to his credit; and, therefore, the judgment of the County Court, allowing, or refusing to allow such demands, cannot, in the present attitude of this case, be legitimately questioned by the plaintiff, or revised by this court.   It may, however, be proper to remark, that the record before us wholly fails to show the different items of which said demands are made up, or the evidence by which they were supported or established, while it is shown, affirmatively, that so much of them as was rejected by the court was improperly charged against the county.   There does not, therefore, appear to have been any error in the proceedings and judgment of the County Court in refusing to allow said demands, or to credit him by the amount thereof on said settlement.

In the transcript of the record before us, the Clerk has inserted, improperly, several judgments of the County Court, pronounced at the January term, 1840, refusing to allow claims presented against the county by the plaintiff, having no connection, whatever, with the settlement of his accounts with the county, now under consideration, and also, a separate settlement of his accounts with the county, made at said term, none of which can, in any view of the subject, be regarded as a part of the record of the case brought before this court by the writ of certiorari, nor can a portion of said judgments, refusing to allow said demands, under any circumstances, be properly removed into this court, for adjudication and revision, by such writ, because they are not of that class of cases to which it is applicable; and, therefore, they cannot be, at this time, considered or adjudicated.

The record also shows that the plaintiff, at the settlement made by him with the County Court, at the October term, 1839, upon which the judgment, rendered at the January term, 1840, appears to be founded, rendered to the County Court, his accounts of moneys collected and received, and which ought to have been collected or received by him, for the county, the correctness or truth of which

does not appear to have been, in any manner, questioned or contro-verted; and, therefore, according to the exposition hereinbefore given to the statutory provisions, relating to the subject, he, upon his failure to pay the balance, found against him on such settlement, according to law, thereby forfeited and became bound to pay to the county only "five per centum per month on the amount wrongfully withheld, to be computed from the time payment ought to have been made, until actual payment," but did not incur a penalty of twenty-five per centum, to be added to such balance, "and fifty per centum per annum, therein, until the same shall be paid," as the County Court appears to have considered he had done, and he would have done, if he had failed to render true accounts, or settle with the County Court; in which event, only, the collector is liable to the penalties denounced in the twenty-fourth and twenty-fifth sections of the 43d chap. of the Revised Statutes, page 226; and the court has, upon good cause shown, at the next succeeding term, power to set aside the settlement made, and to re-examine, settle and adjust the accounts of such delinquent collector, according to law, and "remit any penalty that may have been imposed;" and, therefore, said judgment of the County Court, charging the plaintiff with a penalty of twenty-five per centum on the balance found to due from him to the county on said settlement, added thereto, together with fifty per centum per annum thereon until the same shall be paid, is illegal and erroneous.

The record, as before stated, also shows that the settlement in question, although it was made on the 18th day of November, was made *at* the October term, 1839, of the County Court; the regular terms whereof were at that time, and still are, required, by law, to be held on the second Mondays of January, April, July and October; see *Acts* 1836, *p.* 180; and it is provided by the 69th section of the 128th chapter of the Rev. Stat. p. 683, that "if there be no regular term of the County Court, in any county, in the month of November, in such case a special term of said court shall be held in such county on the second Monday of November, in each year, for the purpose of acting on the collector's delinquent list; and at such special term the collector shall make settlement, as required by this act, at a regular term." It is, therefore, perfectly manifest, that a special term of the

Lawson, Sheriff, *against* the County of Pulaski.

County Court should have been held on the second Monday of November, 1838, as required by the provisions of the statute above quoted; and it is a proposition equally clear that no term of any court can be legally kept open, continued and held after the time prescribed by law for holding the next succeeding term thereof, because the previous term, if not otherwise determined, must, of necessity, be determined, by operation of law, whenever the time for holding the succeeding term arrives; consequently, the October term, in question, was legally closed at the Saturday next preceding the second Monday of November, 1839, that being the last day upon which it could have been legally held; and, therefore, the term, on the 18th day of November, 1839, must be regarded as extra-judicial and wholly unauthorized by law; wherefore, the judgment at January term, 1840, founded thereupon, ought to be, and the same is hereby, quashed and set aside with costs.