Walker, J. This case was submitted to the chancellor upon the bill, answer, replication, and exhibits, under an agreement of record, that the statements and allegations in the bill be taken as true, and that the defendants’ answers also be taken as true so far as they are responsive to the bill. The facts, as disclosed by the record, are, that, on the first day of August, 1843, the county court of Pulaski county appointed William Brown, Sr., Jared C. Martin, and William K. Inglish, commissioners to inquire into the expediency and practicability of establishing a poor-house for the use of said county, and to inquire if a suitable piece of land could be obtained, for that purpose, in the neighborhood of Little Rock by donation or otherwise, and report to the next term of said county court: that afterwards, on the 20th day of October, 1843, and, whilst said court was in session, Jared 0. Martin and William K. Inglish, two of said commissioners, reported to said court that they deemed it practicable and expedient to have such house built, and recommended the purchase of land for that purpose, stating that no donation could be obtained, but that defendant Lincoln owned a forty acre tract of land which would answer; which report was, on the 20th of October, 1843, adopted by said court; and thereupon said court appointed said Martin, Ingiish, and Henry F. Pendle-ton, commissioners, with power to select and purchase a suitable site for the erection of said poor-house, and that they should report their proceedings to the next term of said court: that, at special term of said county court, held on the second Monday in November, 1843, it being a special term of said court, authorized by law for the sole purpose of acting on the delinquent list and settling with the collector, said Ingiish and Pendleton, two of said commissioners, reported to said court that they had selected and purchased from defendant Lincoln, forty acres of land, in the vicinity of said city, as a suitable site for said poor-house, at the price of $400: that defendant, Lincoln, and wife, had executed a deed for the same; which report and deed were accepted by said court, and the report adopted, and the sale approved; and said court further ordered that a warrant issue to said Lincoln for the sum of $400, which was done: all of which orders and proceedings in said court were had and made whilst said Lincoln, as presiding judge, and King and Moore, as associate justices, presided, and held said court, being the sole judge and justices of said court therein presiding: that, at the January term, 1844, of said county court, by the order, decision, and judgment of said court, said purchase was disaf-firmed, rescinded, annulled, and set aside, and said report rejected, the deed ordered not to be recorded, and suit ordered to cancel the scrip, and set aside the proceedings. And such is substantially the relief sought. Lincoln, King, Moore, Martin, Pendleton, and Ingiish, are made defendants to the bill. The material issue is between defendant Lincoln and the county of Pulaski. There can be no doubt but that the county court had jurisdiction over the subject of providing for the comfort and support of the poor of their county, and must necessarily exercise this power under a sound discretion, as circumstances require: nor can there be a doubt that the court may, for their own convc-nience, and to facilitate the object in view, appoint commissioners, whose acts, in the exercise of the power conferred upon them, when confirmed and ratified, are as valid as if done directly by the court. The statute has expressly provided fo«r the appointment of such auxiliary agents, (Digest, sec. 8,p. 287.) and the ninth section declares all acts duly executed under such authority valid. ■ It is contended for the county, 1st. That there was no competent court, the presiding- judge being incompetent, and therefore the proceedings are void: 2d. That the contract was consummated by a special county court, so limited in jurisdiction as not to embrace this subject, and for that reason also their acts are void. ■ The statute provides that “the presiding judge of the county court,- and any two justices of the j)eace of the county, shall be a quorum to transact business.” Digest, sec. 4, p. '309. In this case, the record, in every instance, shows a competent court in numbers, but it is contended that the presiding judge was interested in the subject matter before the court, and was therefore incompetent to sit as a member of the court. If this be true in point of fact, the objection is a good one. The constitution ordains that “no judge shall preside on the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected with him by affinity or consanguinity within such degrees as may be prescribed by law.” Art. 6, sec. 12. The statute provides that “ no judge of the circuit court, justice of the county court, or judge of probate court, shall sit on the determination of any cause or proceeding in which he is interested.” Digest, sec. 16, p. 316. These express constitutional and legislative prohibitions are too plain to require comment. Let us see, then, in what instance, if at all, this judge did preside in a cause in which he was interested. It will scarcely be contended that he was interested in the first order made, which was simply to inquire into the propriety of establishing a poor-house; nor can it be said that he was interested in the order appointing commissioners to select and purchase a site for such poor-house. It is true that, in the first report, the commissioners reported that the only situation, which they could find suitable, was the property of the presiding judge of the court, and it is likewise true that they were immediately appointed by the court (of which the presiding judge was a member) to select and purchase a site; but in this the presiding judge cannot be said to have been interested. Had he ordered them to buy the tract of land recommended in the report, it might, with much propriety, have been argued that he was interested. These circumstances, connected with the fact that the commissioners did contract for the same land referred to in their report, had fraud been charged, it might have aided in fixing it upon the defendant. There is, however, no charge of fraud in the bill, and if there had been, the answer positively denies it. The order, therefore, appointing these commissioners to select and purchase a suitable site for the building, was not an order in which the presiding judge can be said to have been interested, and being a subject within the jurisdiction of the court was a valid order. From the terms of the order, howeyer, as well as from the nature of the trust, we are of opinion that the county court never contemplated conferring an absolute and unconditional power upon the commissioners, but that, when the terms were stipulated and agreed upon, they should be reported to the court for their confirmation or rejection; because, at the close of the order appointing them, they say, “the court will pay for such site what the commissioners report necessary for the same and the court deem reasonable.” Here the court expressly reserves to itself the right to determine whether it was a reasonable or an unreasonable contract, and this right to determine necessarily carries with it the right to reject a contract, which they deem disadvantageous or unreasonable. The commissioners, as by their own report is shown, never did make an absolute purchase, but say that they have selected certain land which was purchased of defendant Lincoln, and that a deed is transmitted with the report, and closes thus: “And your commissioners would ask that a warrant forthwith be issued for said amount, and also Ibat the court ratify the purchase this day, so that your commissioners can proceed to have buildings erected.” When it is remembered that the defendant,. Lincoln, was well advised of all the orders, and the nature and extent of the power conferred, it is conclusive, to our minds, that the final consummation of the contract vims made to depend upon the approval or disapproval of the court. It becomes necessary to determine then whether this special court had or had not jurisdiction over the subject of the report; and, if it had, whether the court, as it was organized, was a disinterested and competent court to approve and adopt the report, and order the purchase money to be paid by the county. The statute provides “ that if there is no regular term of the county court in any county in the month of November, in such case a special term of said court shall be held, in such county, on the second Monday in November, in each year, for the purpose of acting on the collector’s delinquent list, and at such special term the collector shall make settlement as required by this act at a regular term.” Digest, sec. 73, p. 882. This act was designed for a special purpose, limited to a particular case, and it must be limited to that, or remain without limitation; because there is as much propriety in applying the exception to one case as another and to all as any one. It is recognized and held by this court, in the case of Lawson, sheriff vs. Pulaski County, as a special court of limited jurisdiction. 3 Ark. 1. In the case of The State vs. Dunn, (2 Ark. Rep. 229,) it was held that where a special term is ordered, its jurisdiction is limited to the particular case which it is called to try, and can take no jurisdiction of any other; and such is the construction we will adopt in this case. But if in this we were in error, it is manifestly clear that the court, as organized, was wholly incompetent to affirm the sale, or direct the purchase to be paid for by the county. We have seen that it requires the presiding judge and two associate justices to constitute a legally organized court. The argument, that two of them were competent to decide a question, and that the presiding officer did not vote, cannot, we apprehend, affect the question in any respect. It is not whether a majority of a court can or can not carry a question, but what number is necessary to constitute a court. It requires a certain number of the members elected to the Legislature to convene in order to organize that body, still when organized a majority of that number can pass an act. A majority of the quorum, however, would not constitute a legally constituted legislative body for business; and an act, though passed by a bare majority, is, nevertheless, the act of the whole assembly; and so with the court: it could not have existed a moment without the presence of all three of the presiding officers; and every act done was the act and judgment of the whole court. The presiding justice may truly not have voted, yet his presence and influence might have weighed heavily in the determination of the case. The object of the constitutional restriction is to secure an impartial administration of justice, and nothing could be better calculated to bias the judgment of the court than for its members to be directly interested in a matter of bargain and sale to one of them. It is argued that, admitting it to be true that there was no competent court to adopt and approve the report, and direct the payment, and that the presiding justice was so interested in the subject of their deliberations as to render the court incompetent to act on the report, still the contract is valid, having been completed and closed by competent parties before the sitting of the special court. This argument has been anticipated by the opinion already given, with regard to the extent of the power conferred on the commissioners. But there is a question which arises out of the manner in which the commissioners performed their trust, which it becomes important to consider. This was a special agency delegated for a particular purpose, and must be strictly pursued. 2 J. R. 48, 5 id. 56. 26 Wend. 192. 1 Wash. C. C. R. 174. It was a power conferred on three commissioners jointly to do a certain act. The rule is, that, where there are joint agents, they must all join in executing the agency. 6 Pick. 198, 3 id. 232. 12 Mass. 185, id. 189. Story says “that where an authority is given to two or more persons to do an act, the act is Amiiq to bind the parties only when all of them concur in doing it, for the authority is construed strictly, and the power understood to be joint and not several.” Story on Agency, 46. This power was executed by only two of the commissioners, as stated in the bill, (which, by agreement, is taken as true,) and as proven by the exhibits. If this be true, the authorities are clear and conclusive that two of the commissioners were incompetent to execute this trust, and that their acts are not binding on the county, and are void. This being the case, according to the facts presented by the record, the defendant, Lincoln, has procured to be issued, and possessed himself of, a county warrant for four hundred dollars without consideration and contrary to law: which warrant, the county prays may be re-called and cancelled, or other adequate relief afforded her. In view of the whole premises, we think the county entitled to the relief sought. The decree of the circuit court must be reversed and set aside with costs, and the cause remanded with instructions to said court to render a decree for the complainant in accordance with the prayer of the bill.